The court now calls 118672, People of the State of Illinois v. Gregory Hernandez. Are you ready to proceed? Appellee, ready? Good morning, Your Honors. Good morning. May it please the Court, Assistant Attorney General Garson Fisher for the People. Your Honors, in 1998, when the defendant committed his crime, the elements of armed robbery and armed violence in the Category 3 weapon were not identical because many objects satisfy the dangerous weapon element of armed robbery but not the Category 3 weapon element of armed violence. A defendant concedes that point. And contrary to the defendant's position, that does settle the matter. The identical elements test exists to compare two crimes whose elements have been defined identically by the General Assembly. It's not fact-specific. It's not case-specific. The reasoning behind the identical elements test is where the General Assembly has created two crimes with exactly identical elements and different penalties. They necessarily haven't set the penalty of one of those crimes in accordance with its severity. If the elements of those crimes are defined differently in any way, then there is a rational basis for giving them different penalties. So when the defendant concedes that the General Assembly defined Category 3 weapon differently than the dangerous weapon element in armed robbery, he concedes that his claim fails under the identical elements test. This would be true even if the object, in this case, could satisfy both the dangerous weapon element and the Category 3 weapon element. But as it happens, this case demonstrates the differences in the definition of these two elements because the tin snip set issue here satisfied the dangerous weapon element of armed robbery and not the Category 3 weapon element of armed violence. A dangerous weapon in armed robbery is defined by common law, and it can include any weapon that can be used in a dangerous manner to harm another person. A Category 3 weapon, in contrast, is defined by statute and includes a list of enumerated weapons as well as other weapons of like character. The common character of those enumerated weapons isn't their size or their weight or their shape. Billy club and brass knuckles don't share a whole lot in common when it comes to those physical characteristics. The common character of these enumerated weapons is that their principal purpose is to inflict the harm when someone strikes a victim. So, for example, SAP gloves or weighted gloves, which don't look particularly like the enumerated weapons, could satisfy the Category 3 weapon element because their principal purpose is to harm another person when striking them. But the tin snips here, no matter how big and heavy they are, don't satisfy that element. That object is a tool. Its purpose is to cut things, principally metal, and not to strike another person and increase the harm you do when doing so. So, Mr. Garrison, are you saying that the manner in which an object or instrument is used makes the difference when deciding what type of weapon it is? No, Your Honor. I'm saying the manner, its purpose. So we're just talking about the Category 3 weapon element of armed violence. The common characteristic that an object that's not enumerated could also satisfy that element is its purpose being principally its use to strike another victim. If the use of an object in a specific case were relevant to that inquiry, then it would obliterate the doctrine of a justum generis, which this Court relied on in Davis because so many objects, a flash ashtray, a heavy flashlight, a dictionary, can be used to strike someone, which is why they satisfy the dangerous weapon element of armed robbery. But their purpose is not to increase the harm on a victim when striking them, and therefore they don't satisfy the Category 3 weapon element of armed violence. If they did, it would have rendered the General Assembly's efforts to define that element by enumerating certain objects essentially meaningless. One of the dictionary definitions of bludgeon, I think, is a club that's larger at one end and smaller at the other. Is a baseball bat a bludgeon? I think a baseball bat is not a bludgeon. It would not satisfy the Category 3 weapon element, but because its principal purpose is not to inflict harm on someone when striking them. That is a closer case, and I think if you broke off a piece of wood or a piece of metal and then used that as a bludgeon or a billy club, then that could satisfy the Category 3 weapon element. Sort of like as the lower courts have discussed, a broken bottle can satisfy the Category 2 weapon element because it no longer has a purpose other than stabbing someone with it, whereas a whole bottle, even if it's used to hit someone, would not satisfy the Category 3 element. So of like character means not that it's like a bludgeon. If you define a bludgeon as a wooden club with a large end and a small end, it's the purpose of like character. Is that what you're saying? Yes, Your Honor, because I think that while a bludgeon's physical characteristics are certainly described as, you know, an object that's narrower at one end and wider at another, what distinguishes a bludgeon from, for example, a baseball bat or a bowling pin or any other object that's shaped similarly is that it is used principally to strike a victim and cause increased harm to the victim. So if it looks like a duck and walks like a duck, it's not a duck? Is that what you're saying as far as a baseball bat or a bowling pin? Well, I think, Your Honor, to use your phrasing, it might look like a duck, but it doesn't walk like a duck if its purpose isn't to be used as a weapon to strike a victim. And the Category 3 weapon element specifically says other weapons of like character. And again, the enumerated elements aren't all bludgeon-like in shape, but they are all bludgeon-like in purpose. That is the common character that defines that category of weapons that the General Assembly has defined and made an element of the armed violence statute. In contrast, the common law dangerous weapon element, which can include any object, such as a baseball bat, that can be used in a dangerous manner to harm another person. Given the fact that the common law definition of dangerous weapons omits consideration of the manner in which an object was used, is there a compelling legal rationale for refusing to consider that circumstance in deciding whether an object is a Category 3 weapon? Yes, Your Honor. I think the fact that the General Assembly defined Category 3 weapons, since the common law definition is a statutorily defined element, and they enumerated specific weapons and then said others of like character, means that the doctrine used in generis applies. And if the manner in which it is used in a specific case is taken into consideration, then it would blow the category up into such a large potential group of objects that it would essentially have rendered the General Assembly's efforts to define the element. So that's a compelling legal rationale? I believe the use of generis would be the legal doctrine that would be the rationale behind not applying that. And also the language of the statute says of like character. And an object's character is not defined by how it's used in one specific case. An ashtray can be used to hit someone over the head. I think it's fairly clearly not of like character to the enumerated items or weapons that the General Assembly has defined. In sum, Your Honors, I would say a dangerous weapon under common law is any object that can be used to strike and harm another. The Category 3 weapons are an object whose principal purpose is to strike and harm another. Are you saying that in this case the threshold question is really one of statutory interpretation? Absolutely, Your Honor. It's a question of how to define a Category 3 weapon? Absolutely, Your Honor. If we accept your definition, then it really isn't a constitutional question. It's a question of because then by definition, legal definition, it would not be considered the same as a dangerous weapon. Absolutely, Your Honor. The Identical Elements Test for the Proportion Penalties Clause necessitates a certain degree of statutory interpretation because it compares crimes whose elements have been defined identically by the General Assembly. That's how the Court explained it in Lewis and Sharp when the Court discussed the ongoing use of the Identical Elements Test. It explained that the reasoning was that when two crimes are given exactly identical elements by the General Assembly and different penalties, then one of those penalties is necessarily not set in accordance with the severity of the crime. So it's not fact-specific or case-specific. It necessarily is determined by the elements as defined by the General Assembly. And that's why, again, in conceding that these two elements were defined differently by the General Assembly, the defendant has conceded that his claim fails under the Identical Elements Test. Thank you. Unless Your Honors have any further questions about the application of the Identical Elements Test in this case, I'd just quickly point out that Estoppel doesn't bar the state from raising the arguments it makes here. The state never asserted below that tin snips satisfied the Category 3 weapon element of armed violence. In fact, they dropped armed violence charges in recognition of the fact that they would not satisfy that element. It wasn't necessary for armed robbery to prove that the object was a bludgeon. Any dangerous weapon satisfies the armed robbery category. So the state benefited in no way from using the word bludgeon in the information. And it would be strange, indeed, if the facial constitutionality of a statute could be decided by a state's attorney's choice of words in a charging instrument in one specific case. Even if the state had made some sort of assertion about statutory interpretation, which it didn't at the trial court, this court would not be bound in its statutory interpretation by that position. So there's no Estoppel barring the state from arguing the constitutionality of the armed robbery statute and sentencing scheme. Unless the court has any further questions, people ask that the court reverse the decision of the circuit court. Thank you, Your Honors. Thank you. Good morning. Good morning. May it please the court, counsel. My name is Paul Rogers. I am with the Office of the State Appellate Defender, and I represent Mr. Gregory Hernandez. Your Honors, there are two reasons why the state should not prevail in this appeal. Before I name them, I just want to mention a common theme that connects these two reasons. And that common theme is common sense. In the previous argument, Justice Freeman referred to a courtroom that was concerned about the real world. This courtroom is part of the real world. Common sense has a role to play in the law, as we're told. Common sense is what trial lawyers often argue to juries. Common sense isn't something you check at the courtroom door. Now, the first reason is that why the state should not prevail is that it would be unfair. And that's the judicial estoppel argument, which I'll talk about more fully later. And second, the state is simply wrong when it says that armed robbery and armed violence have different elements. Starting with the judicial estoppel argument, that's an equitable doctrine. The heart of equity is fairness. Now, the state is essentially flip-flop on whether the tin snips used in this case are bludgeoned or not. It is now trying to deny something it alleged at trial and something it profited from that allegation by obtaining a conviction and a 40-year sentence for armed robbery. Back in 1998, in the indictment, the state alleged for both armed robbery and armed violence that the defendant was armed with a dangerous weapon, comma, a bludgeon, not tin snips, a bludgeon. That is a factual allegation in the indictment. And I think changing its position is something that offends even a child's sense of fair play, that you can't say that something was an X yesterday and today it's not an X because it suits your purpose today to say that it's not an X. May I say just procedurally where we are in this case? Certainly. All right. This issue of proportional penalties was not raised in the trial court originally, correct, in the trial? No. Was it raised on direct appeal? No. So the first time it was raised was in post-conviction relief. Is that where we are? Correct. Yes. So that was the first time the defense raised the issue, and this is the first time the state had an opportunity to respond to that issue. Correct. I don't think that that matters because you're dealing with the constitutionality of the statute. The trial court found that it was basically unconstitutional in their court. You're talking about a sentence being void, so that is something that can be raised for the first time in post-conviction. The issue that you're talking about is estoppel, whether or not this court can even reach that issue or analyze the state's argument. Yeah. And this is a sense that it's related to an idea of forfeiture, et cetera, waiver perhaps. But clearly the issue of this statute, the constitutionality of this statute, was never raised in the trial court or on direct appeal. That's true. I think this goes beyond waiver and forfeiture. This is, again, the state made an allegation in 1998 that this was a bludgeon. Now they're saying it's not. Those are factual allegations. The first one was that it wasn't, and now they're saying, as a matter of fact, it couldn't have been a bludgeon. As a matter of law, it could have been a bludgeon because of the fact. But they did drop the armed violence charge. They did, and I'm glad you mentioned that, because this came up in the briefs. And it's true they dropped the armed violence charge, but when they did so at the time of trial, they did not say that they were dropping the armed violence charge because this was not a Category 3 weapon. They gave no reason for dropping the armed violence charge. I'm sure this court knows this was a multiple count indictment. It wound up going to a bench trial. For whatever reason, as the state often does, it chose to thin out the charges that were actually going to go to trial, and it simply dismissed without comment, I believe in the record, why it was doing so. So I think it's somewhat disingenuous to claim that was the motive for dropping the armed violence charge, that, oh, well, we knew this would be a portion of penalties violation, and we knew we couldn't get an armed violence conviction based on this, so that's why we dropped it. Well, regardless of that, what benefit, then, would the state have in describing the SNPs as a bludgeon? They get to keep their armed robbery conviction and the 40-year sentence. They profited from a trial by getting a conviction. Now they're profiting from denying it by avoiding the consequences of a portion of penalties violation. So they want to accept the benefit without accepting the negative consequence by changing the definition of what this object was or changing their characterization of what this object was. And it's also, I think, somewhat disingenuous for the state to say that it never alleged that the defendant was armed with anything other than tin snips. In the armed robbery charge and in the armed violence charges, in all those counts, tin snips never appeared. Again, it was the defendant was armed with a dangerous weapon, comma, a bludgeon. How they proved it was a dangerous weapon was by proving that it was a 16-inch, very heavy pair of metal tin snips, but they alleged was a bludgeon. So that, I think, addresses the judicial estoppel point. Now I want to turn to the substantive question of whether these are identical elements. The state says these are not identical elements. That you should just look at the statute, or the two statutes. Let's do that. Here is the armed violence statute, 33A-2. Armed violence, elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. Now let's turn to the armed robbery statute. Again, these are the 1998 versions. I don't think they've changed much in relevant aspects. The armed robbery statute. A person commits armed robbery, this is 18-2. A person commits armed robbery when he or she violates section 18-1, commits a robbery, when he or she carries an unauthorized person, or is otherwise armed with a dangerous weapon. They have the identical phrase, the identical element. Armed with a dangerous weapon, armed robbery statute. Armed with a dangerous weapon in the armed violence statute. I don't know how they could be more identical. Now the state wants to avoid that consequence by looking and focusing on the definition of dangerous weapon in the armed violence statute. I will admit that the General Assembly has the power to define the same phrase differently in statutes. I'll admit that the definition for dangerous weapon for armed robbery is broader than the definition for dangerous weapon for armed violence. I disagree strongly with the state's claim that that settles the issue. The definitions are not mutually exclusive. The same thing, such as a loaded gun, can count as both a dangerous weapon for armed violence and a dangerous weapon for armed robbery. If they didn't overlap, we wouldn't have had a proportionate penalties problem in any of the gun cases. So the key question is really whether, despite different definitions, the tin snips of the type that was used here counts as a dangerous weapon for both armed robbery and armed violence. Were these tin snips, tin snips of this description, of these physical characteristics, a dangerous weapon for both armed robbery and armed violence? Was it a Category 3 weapon for armed violence? Now, the Identical Elements Test isn't blind to the facts. And here's an analogy that may or may not be helpful. You can think of the phrase, dangerous weapon, as the element. Or you can think of the definition of that phrase as the element. So the phrase would be sort of analogous to basket. And that's the element. The definition is the contents of the basket. What gets to go in the basket? You could call that the element. But I think you start with the phrase. And the definition tells you whether something meets the criteria for being that element for the purposes of a given statute. But it doesn't make it a different element. Every element, including identity, or to bring an example maybe closer to home, for armed violence purposes, a knife with a blade that's longer than three inches is a Category 2 dangerous weapon. If at trial, with a jury, there is a knife that has a blade, it's a chef's knife, say, and it has a blade of eight inches, ten inches. Nobody, no rational person would deny that that's a knife with a blade longer than three inches. You can determine that objectively. You can hold up, look at it, and you can tell. You can show it to the jury. You still instruct the jury that they have to find that the state proved that element beyond a reasonable doubt. So the same thing is true here. The state has to prove, for purposes of armed robbery and for armed violence, that the defendant was armed with a dangerous weapon. Now, when they proved it here, they proved that it was a dangerous weapon for both. Now, why is it a Category 3 weapon? And that brings us, I guess, to the Davis case. And I hope this was clear in the briefs, because perhaps it wasn't as clear as it could have been. But there are really two ways in which I think the state's reliance on Davis is misplaced. First, Davis does not bar an armed violence charge here, would not have barred an armed violence charge in conviction here, because tin snips of this particular kind, that have this particular physical characteristics, count as a weapon of like character to a bludgeon. And Justice Carmeier asked the question about a baseball bat. And I think intuitively, a baseball bat, and you can think of even the toy baseball bats that they hand out sometimes at games as a gift for attending the game, but it's maybe 12 inches long. It's smaller on one end, thicker on the other. Looks pretty much exactly like what I think a bludgeon would look like. And it certainly could be used as a bludgeon. The state conceded that if it was a piece of wood or a piece of metal, that would be a closer case. Then there you're talking about the particular physical properties of the item, and not its intended use. The state is coming close, if not crossing the line, to admitting that if Mr. Hernandez had picked up, say, a 16-inch long piece of 2x4 and used that to beat the victims, in this case, in the head, that was a bludgeon. Mr. Rogers? Yes. If the statute read a Category 3 weapon as a bludgeon, blackjack, slingshot, sandbag, sand club, metal knuckles, bully, or tin snips, would we be saying, huh, tin snips? If we had a question to say which doesn't belong in this list, as you often see in different exams, wouldn't we throw out tin snips? If you were looking from one perspective, I would agree with you. But on the other hand, if the General Assembly put in tin snips, I think they covered that when they say dangerous weapon of like character. That's my point. I mean, it has to be a weapon of like character, right? So you look at the specific list, and then whatever you're going to add of like character, there must be some characteristic of what's named to what isn't named. Right. I understand your point. And I think that there is some intuitive appeal to what you're saying. But I would make another point, which I think also has an intuitive appeal, and I hope more than intuitive appeal. Hammers. The state argues as if, well, it doesn't make any difference, really, what kind of hammer it is, because a hammer is a tool. And I'd submit that this tool-weapon dichotomy is a distraction and somewhat artificial. And I would revert back to the knife example. I would bet everybody in this courtroom has in their kitchen at least one knife with a blade longer than three inches. You have that in your kitchen not because it's a weapon, but because it's essentially a tool. It's a tool that you use in cooking. It also can be used as a weapon. I mean, you decide to use it as a weapon. And the same is true for tin snips or hammers. These things are not all the same. There are tin snips that can be very small. There are hammers that can be very small. There are screwdrivers that can be very small. There can be screwdrivers that are very big, tin snips that are very big. This is 16 inches long. We don't have the exact weight, unfortunately. But we know that one of the victims said, who was familiar with the object, said it was very heavy. I think what's problematic to me is there is a specific list under Paragraph C. And under your analysis, why wouldn't it just read, category three weapon is anything that can be used for harm? Well, I would say it would be anything that can be used as a club because that's what those things have in common. They are club-like weapons. I see the armed violence statute separating dangerous weapons in three categories. They essentially are guns, knives, cutting, slicing instruments, stabbing instruments, and club-like weapons. Do you disagree or agree? You could harm someone with almost any object. If you picked up your laptop computer and hit somebody in the head with it, you'd do some harm. It's certainly not a weapon. That's true. But if its physical properties are sufficiently like a club, then it's a club. Well, there it's being used like a club. A baseball bat, a golf club is literally a club. A croquet mallet is a club. It shares the relevant physical properties of a club, of a bludgeon. All those things that are listed, and I guess that's my point, is that you have to look at it's not any old thing. It's not anything that can be used as a weapon that can cause harm that would count as a Category 3 weapon or a Category 1 or 2 weapon, for that matter. How do we separate it? Create the portion of penalties problem. How do we separate it then? Well, you look at the two statutes. The portion of penalties problem only arises if something can count as a dangerous weapon of Category 1, 2, or 3 for armed violence. Category 1, 2, and 3 weapons aren't a comprehensive list of all types of weapons. I think I gave some examples in my brief. For example, pepper spray. Pepper spray isn't a gun. It's certainly not a cutting, slicing, or stabbing instrument. And it's not a club. It's a dangerous weapon for armed violence and can be used as a dangerous weapon. So, I guess there are many things that can be used as weapons, but that doesn't mean that somehow we're going to swallow the armed robbery statute if we find a proportion of penalties violation. Let me ask you before you run out of time, if we were to agree with you, what happens next? What happens next is Mr. Hernandez gets a new sentencing hearing on the armed robbery charge. And how is that sentenced? The relief is discussed by both parties, and the state has proposed the normal sort of the default remedy in the portion of penalties case has been to revert to the statute, the armed robbery statute, as it existed before there was a problem. And in this case, it would mean going back to the pre-1978 statute. Before classic sentencing. Right. What is your proposal? Well, the state, we have no objection to either of the state's alternatives. And the state's alternatives are, they wind up in the same place, which is remand or resentencing on the armed violence, on the armed robbery charge with instructions not to exceed the maximum extended term for a category 2, for a class 2 felony, given that this is a category 3 weapon. And we have no objection to that. We aren't conceding necessarily that, you know, the state claims that the pre-1978 version of the statute is unworkable. But, you know, we have no objection. Is there some case law that would direct us as to what the remedy is? No, I think that's the, except perhaps the Ligon case. I'm not sure. I'm not going to try to predict how that case is going to come out. But that overlaps with this case in some respects. I think it may be a case in which this court has to fashion a remedy that suits this particular problem. But I don't think that sounds like I'm searching for a compliment or like I'm trying to compliment you. But I have no doubt that this court is capable of fashioning a remedy to suit this sort of unusual circumstance. I don't think that's a problem at all. Unless this court has any other questions, I know I'm out of time. So I thank the court. And I ask this court to affirm the trial court's decision. Thank you very much. Mr. Fisher, before you get started, it seems that in prior years the state has tried to expand the definition of bludgeoning in connection with various crimes, including armed violence. It seems what you're arguing here is we should narrow that. If we agree with your position and reverse the holding of the lower court, would we not be limiting in the future the type of crimes that could be charged as armed violence, a type of weapons? Your Honor, you would be limiting the type of weapons that can be charged as armed violence, but more so than the General Assembly has already done. And generally speaking, the state is not bound by any sort of non-mutual estoppel from positions in previous cases because it would limit discourse. So the state could not charge somebody with armed violence using a bludgeon if he had a baseball bat? Well, as I said earlier, Your Honor, I think that's a closer case. But, yes, I think that's right, Your Honor. Because it's not a weapon of like character. Is that your position? Correct, Your Honor. And I think that actually brings me to one of the points I want to make, which is in discussing the statutes, defense counsel skipped over Section 33A1 to a certain degree. And that has to mean something. The fact that the General Assembly defined Category 3 weapon in Section 33A1 would be rendered meaningless if, in fact, all that mattered is that they used the word dangerous weapon in Section 33A2. They have defined the element here. And they've defined it differently than armed robbery. And if the fact that these elements are not identical is not enough to demonstrate that there's no violation of the identical elements test, if all that matters is that the elements are not mutually exclusive, it would blow the identical elements test up to the point where it would be invalidating all kinds of statutes. The property element of burglary and the residence element of residential burglary are not mutually exclusive elements. It doesn't mean that those crimes violate the identical elements test. The identical elements test works and makes sense because it applies only when the General Assembly has defined the elements of two crimes identically. And, again, defendant, it's on page 27 of his brief, and he's done it at oral argument today, concedes that these elements are not defined identically. And that, under the identical elements test, is the end of the matter. Addressing the question of estoppel briefly, the fact that the state said bludgeon is not germane to the court's analysis here. The defense was always on notice of what object we were talking about here. Again, the armed violence statute to be charged was dropped, and while it wasn't commented upon, if the state had, in a different case, initially charged both felony and intentional murder, and then decided that the facts of the case didn't support felony murder because there wasn't an independent felonious purpose, that wouldn't render an eventual intentional murder conviction unconstitutional because they had once considered a charge that wasn't supported by the facts, and the use of the word bludgeon was irrelevant to the armed robbery charge. You don't have to prove a bludgeon for armed robbery, you have to prove a dangerous weapon. Any dangerous weapon satisfies that element. Defendant mentioned the Hauschildt-Clemens, the cases where armed robbery with a firearm was found unconstitutional under the Identical Elements Test. It's important to note that in those cases, the objects that satisfy the elements of armed robbery with a firearm, namely guns, do all satisfy the elements of armed violence with the category of one weapon. So there the elements are identical, and that's why those were struck down under the Identical Elements Test, but here where many objects satisfy one element and not the other, the elements are not identical. Unless this court has any further questions, again the people ask that this court reverse the judgment of the circuit court. Thank you, Your Honor. Thank you. In case number 118672, people of the state of Illinois versus Gregory Hernandez will be taken under advisement as agenda number three. Mr. Fisher and Mr. Rogers, thank you for your arguments this morning. You're excused at this time. Marshal, the Supreme Court stands adjourned until 9 a.m. on the 12th of November.